Good morning. If it pleases the Court, my name is Stephen Volker. I'm here on behalf of Appellants Backcountry Against Dumps et al. in a lawsuit brought against the Bureau of Land Management over a number of decisions it made. Two decisions loom large in our litigation. The first is, on October 10, 2008, BLM adopted a record of decision for the eastern San Diego County Resource Management Area. This change in the RMP for that area increased the acreage Can I interrupt you for a second? Sure. There seems to be an issue of whether you can attack the record of decision because it's not a final agency action. It seems pretty clear to me from looking at all the cases that the IBLA decision is the final agency action. And you've been called on the carpet for this. How do you get to attack the rod? I don't recall being called on the carpet, and there's no basis for that. Well, that was the basis for the district court decision. There's no basis for the district court decision. You can't attack a rod. I was not called on the carpet, and I take umbrage at that. That's inappropriate. With all due respect, I believe as we articulated to the district court, and as I will explain today and have in the briefs, our position is the correct position under the governing regulations and the decisions of this court in Desert Citizens v. Bizon and MPCA v. BLM. In those cases, the court held that the operative record of decision is by BLM, not IBLA, whereas here, IBLA has failed to render a decision on a timely petition for stay. If I might refer to the record in this case. Have you read the Port of Boston case and the Bennett v. Speer by the Supreme Court on this issue? Yes. How are those distinguishable from this situation? This case involves an interior board of land appeals, a series of regulations. Two have to do with granting of rights of way. The other is a more generalized provision. They all provide that where a timely request for stay is made and the IBLA fails to take its rules, that it loses jurisdiction over the appeal and the underlying BLM decision becomes final, subject to review under 5 U.S.C. Section 704. And that, it seems to be the only reasonable interpretation of that, of those regulations and that statute. If I might refer to the governing regulations, the first would be in 43 C.F.R. Section 4.21 A.3, which provides that a decision for which a stay is not granted will become effective immediately after the director or an appeals board denies or partially denies the petition for a stay or fails to act on the petition within the time specified in paragraph B-4. Now, that's pretty clear. In this case, the facts show that the plaintiffs filed an appeal to the IBLA and a request for stay on March 26, 2009. On May 10, 2009, the IBLA lost jurisdiction by failing to decide their request for stay within the 45-day period provided. Well, I'm not sure the IBLA loses jurisdiction. The cases seem to indicate that you may satisfy your exhaustion requirements if they don't act on time. But the IBLA still has the power to issue a decision. Wouldn't you agree? No. There's no case that holds that the IBLA has power. If its attempted exercise of jurisdiction follows rather than precedes the filing of a Federal district lawsuit, as was done in this case, the IBLA, just to complete the history, Your Honors, the IBLA denied appellants' request for stay on July 14, 2009. Appellants filed this case, Bad v. Abbott, on February 16, 2010, in the district court. IBLA did not purport to deny the appeal pending until May 14, 2010, three months later. So the IBLA lost jurisdiction. No, but it thought it had jurisdiction, correct. I don't know why. We file a lawsuit against the Department of Interior. I'm sorry. It thought it had jurisdiction because it issued a final. I don't know what it thought. Excuse me. What if you wait until Judge Thompson is able to understand the answer? I'm sorry. Yes. Right. No, I mean, I'm just trying to continue the dialogue. I'm not quarreling with you. The IBLA thought it had jurisdiction. It did not credit your theory that it lost jurisdiction for failure to act because it issued a final order later, correct? I can't fathom what the IBLA was thinking. No, but I might explain it. Are we on the same wavelength? Did the IBLA issue a final decision after it denied your request for a stay, yes or no? Not a decision pursuant to its jurisdiction, no. It did issue a document that purported to be within the exercise of its jurisdiction. But I'm not aware of any case under these facts with these regulations that supports the suggestion that IBLA retain jurisdiction even though all of its regulations on point make clear that, and this is consistent with all of the case law dealing with these regulations, that where it does not timely act on a petition for stay or denies a petition for stay, that the aggrieved party may then seek relief in federalistic court, which is what occurred in this case. And we've addressed this in the briefs. I could discuss this at length, and I'd be happy to, but there are other matters, and I'm time limited. No, but the basis of the district court decision in large part was that it was not a final agency action, and therefore it lacked jurisdiction. And if we get to the merits, if we agree with you that it was a final decision, it goes back to the district court, wouldn't you agree? Yes. So the question whether it's final or not is sort of the central issue here. I agree, and we've spent considerable time addressing that in our briefs. I think the briefs adequately cover it. I could distinguish cases ad nauseum, but I think that if you look at the regulations applicable here, you look at the language of 5 U.S.C. Section 704, if you examine Desert Citizens v. Bison and NBCA v. BLM, without deference to Justice Trott's dissent, I think you'll find that the rule is pretty clear that where an agency has carved out the limits of its jurisdiction, its imposed limits on its jurisdiction, it must abide by them. And counsel or an aggrieved party is certainly entitled to rely on those regulations in seeking judicial relief. I don't remember the answer to this, but did you confront the IBLA itself on this issue and say what you've just done doesn't exist because you exceeded your jurisdiction under the regulations? Did you tell the IBLA that in any way? I'm not sure whether there was some further back and forth. I am aware that the IBLA is an arm of the Department of Interior, that the Department of Interior was sued, that the Attorney General on its behalf was served, and the IBLA assuredly was advised by the Department of Interior and by the Attorney General that the suit had been filed and that the suit alleged that IBLA had lost jurisdiction. I don't recall any specific response to that other than in this litigation where there was a suggestion that, no, the IBLA would have to be the appropriate party defendant. Let me explain a little bit why it would be inappropriate to hold the IBLA as the appropriate party. The IBLA sits not as a line agency that does the ISs, that manages land, that has staff. It's merely an umpire calling balls and strikes. So that it's not appropriate to name the IBLA as a party respondent in a case such as this where ---- The District Court's worry was that you didn't appeal from the IBLA decision once it was issued. I mean, you could have appealed from that or sought relief from that in Federal court, not appeal, and then joined the case. I disagree. Respectfully, the IBLA affirmed the BLM decision. Had the IBLA reversed the BLM decision, then it's true. The BLM would then on remand render a new decision. The IBLA does not manage land, and it does not certify EISs. It has nothing to do with that. It would be tantamount to having to sue a superior court if you prosecuted an appeal to the Court of Appeal on the merits, not on a procedural issue like discovery. I'm talking about taking action to enjoin the BLM as a result of the IBLA decision or seeking a petition for review as a final agency action. I mean, you took a little bit of a risk by not taking any action once the IBLA issued its final decision. I don't share that perspective. I think having been in the law firm that handled Desert Citizens v. Bison and having been one of the lawyers handling NBCA v. BLM, I had a good reason to believe that I understood what the regulations said and that the regulations would be governing the situation. So a risk, perhaps, but it would be beyond my expectation. I'll put it that way, my professional opinion. Now, the BLM case shares with the case we argued a few minutes ago, issues respecting the adequacy of the power link rod and its FEIS, and we have addressed some of those previously. It has a different issue that I wanted to approach that has to do with BLM's abrupt change in the planning process for the McCain Valley portion. That's probably the most scenic and remote and recreationally significant portion of the Cleveland National Forest. And the BLM decision rezoned the McCain Valley from providing 51 acres in visual resource value of 4, which is intensive development, from 51 acres to 12,400 acres. It did this without the benefit of any environmental review. It did it, in a sense, in the dead of night, and then it purported to assert that the scope of the alternatives that were assessed in the EIS on the BLM RMP rod encompassed these, that, among other very substantial changes. But that's incorrect, as we've explained in our briefs. The acreage that was changed from recreational use increased by approximately 28,000 acres in a number of different categories, and there were other increases as well in areas subject to mineral leasing entry, areas subject to intensive energy development, areas available for visually intrusive development. Those categories were all substantially either modified themselves or the acreage encompassed by them changed, such that the impacts on the McCain Valley were severe. But these were not addressed in any EIS. Now, this is a case where this court could, by requiring the agency's compliance with NEPA, provide for the long-term appropriate management of this spectacular scenic and recreational resource. This court need not carry over into this case concerns about mootness that have surfaced in the prior case, because in the BLM case, we have long-term adverse impacts on public resources at stake that have to do with future development consistent with the resource management plan. Now, there has been an argument throughout the district court proceedings and on appeal that land use plan amendments are not within the jurisdiction of the federal courts, that there is not a case or controversy or standing, the theory being that there's no immediate impact on any user because the plan is merely a step toward development and that typically some further project approval is required. However, that position is contrary to the consistent views of this circuit as exemplified, for example, in the Wilderness Coalition versus the Department of Energy, where there were nationwide energy corridors established within EIS and the court held that it was deficient. The court held that even though those were broad categories, that alone would not result in immediate energy development. They were a major step in that direction and in order to comport with NEPA's command that you engage the agencies and the public in proactive inquiry as to impacts, long-term and indirect impacts of agency land management at the earliest point possible in the decision-making process, that that would be true in that case. We have Friends of Yosemite Valley versus Norton. Similarly, a land use plan for Yosemite Valley, the court held that NEPA applied, that this was something that the court would review. There are a number of cases involving resource management plans such as Oregon Natural Desert Association versus BLM, where this court as well held that, per Judge Berzon, that an EIS is required for land management actions and the court has jurisdiction to enforce FLTMA and the other statutes that apply. So there shouldn't be any hesitation on the part of this court to address the need for a reasoned and open deliberative process for the McCain Valley and the balance of the resource management plan area. So I wanted to urge the court to set that up at a higher plane, if you will, for exacting scrutiny. I see I'm down to two and a half minutes. May I reserve? Yes, sir. Thank you. May it please the Court. The District Court correctly dismissed the project. You have to identify yourself for the record. We have audiotapes. Brian Toth, representing the United States and the Federal Defendant's Appellees. With me at council table is Janet Schneider from Leithman & Watkins. I intend to speak for 12 minutes. Very good. Go ahead. The District Court correctly dismissed the project challenges to the Sunrise Project in this case for plaintiff's failure to challenge the appropriate final agency action. The plaintiffs, for purposes of exhaustion, did not have to file an administrative appeal with the Interior Board of Land Appeals, or IVLA. But having chosen to do so, and they had a right under the regulations to do that, they're bound to live with the result. The plaintiffs contend that the District Court was divested, the filing of the District Court suit divested the IVLA of authority to further consider the administrative appeal. But there's no support for that in either the regulations or this Court's case law. To be clear, my recollection is the IVLA decision does not address this issue in this case. Right. In another case, the TET partnership case that we cited in our brief, it's an IVLA decision. The District Court noted, I'm sorry, the IVLA noted in a footnote that the mere filing of a District Court lawsuit did not automatically divest it of jurisdiction to consider a petition for reconsideration. But out of the interest of respect of the judiciary and comedy, it went ahead and stayed its proceedings in that case. That's the best indication that I can find that the IVLA believes it is not divested of authority just by virtue of the fact of a filing of a District Court lawsuit. There is, in a case that we cited in our briefs that was later vacated as moot, the Alaska Wilderness case, we cited it for a different proposition, but it involved the Outer Continental Shelf Lands Act, and this Court noted in a footnote that under that act, the filing of a petition for review in this Court did divest the IVLA of jurisdiction because the statute itself provided that upon the filing of the administrative record, this Court should have exclusive jurisdiction over the petition for review. So once the, in your view, once the avenue is sought of administrative appeal with the IVLA and the IVLA issues its final decision, then what's the appropriate avenue of relief from that? Well, they should have included that decision as the subject of their case when they filed an amended complaint in November of 2000. Let's assume that there's no, hypothetically, there's no preexisting Federal complaint. Well, then they can simply go to Federal District Court and sue challenging the IVLA decision. That would be the appropriate final agency action, as the regulations make clear. The plaintiffs rely on two authorities to conclude that the court was, sorry, the IVLA was divested of jurisdiction. First is Section 704 of the APA, but that provides that action, quote, otherwise final is final for purposes of that section if the administrative decision is not made inoperable pending the proceedings. And to determine whether it's otherwise final, you have to look to Bennett v. Speer, which Judge Trott mentioned, which provides the test for final agency action and where the IVLA has issued a decision. In fact, that renders the BLM's decision tentative or interlocutory and not the consummation of agency decision-making under Bennett v. Speer. That's affirmed by the Department of the Interior's regulations that provide that the Interior Board of Land Appeals decision is the final agency action. If that weren't the rule, you'd have two final actions, wouldn't you? I'm sorry, Your Honor? I mean, if that were not the rule, then the ROD and the IVLA decision, you'd have two final agency actions. That's correct. You know, the plaintiffs point to this provision of 4.25 or 4.21 of the regulations. It deals with stays and denials of stays. And the plaintiffs argue that once the board denied a stay, that it lost jurisdiction. But that denial of a stay is what made the decisions in Desert Citizens and in the Joshua Tree Landfill case operative. But it's not what made the decision here operative. The regulations at Part 2800 provide that rights-of-way decisions are effective upon the signatures on the rights-of-way. And that's different from the land management actions that were at issue in these other cases where the regulation did apply and the denial of a stay actually did make the decision operative. So that's another factual basis to distinguish those two other cases. Plaintiffs had a couple options, as I mentioned. One, to avoid this problem, one would have been to include in their amended complaint the challenge to the IBLA decision. And there's no dispute here that they did not do that. So that makes this an easier case. So let's assume that the district court's right in saying it's not a final agency action. I assume that you believe now that any challenge to the IBLA final action would be untimely. I think it's a six-year statute of limitations. They still think there's a remedy. It still would be timely. There might be issue preclusion problems depending on how the Forest Service case is resolved in the district court. But ordinarily, that's correct dismissals for lack of final agency action being jurisdictional or without prejudice. I'd like to briefly address the other principal claim, which was the challenge to the land use plan. And the district court found that that was also not final agency action. Is that known as the RMP, the resource management plan? Yes, resource management plan, or RMP, or land use plan in terms of the status of the statute calls it. The regulations call it an RMP. I mean, what's at issue here? Well, first of all, the district court found that that was not final agency action. Right. We now acknowledge that there's a case law that says that it was. Yes. We agree with that. We mentioned that in our brief. Go ahead. So what do we do? Send it back for a fact-intensive analysis? Or is it sufficiently developed so that we can make a call on the RMP NEPA claim? Well, you know, the district court, the court has those two different options. I don't know. It's certainly within the court's discretion to do either. This being an administrative record case, the record was lodged with the court. It's as full and developed for this decision as it's going to be. And this court, having de novo review authority, can, of course, look directly to the administrative record and review that. Do you have a preference? You know, given the considerable amount of briefing that has already occurred here, I think this court should resolve the issues. I like the phrase fact-intensive analysis because we're dealing with the same facts. I guess our review is less intensive. Maybe. No. I mean, that's what people often say. We ran to the district court because it's fact-intensive. Well. It's a very fact-intensive case. But there's no supplemental, I assume, no supplemental discovery because we're dealing with an administrative record. It's all there. That's correct. I mean, certainly the district court is very familiar with the record as well. And, you know, you've seen from the district court's decisions, taken a very robust analysis of the merits in these cases, where they reach the merits. Certainly more familiar with it because it's been a longer time with both cases. Yes. So, you know, I think it would be appropriate. The court certainly has discretion to do either way. I'd like to make, you know, one point here that we're dealing with a similar situation to the project where NEPA's action forcing requirements worked well with regard to the land use plan as well. And the BLM was being responsive to public comments when it decided to adopt a land use plan that was different from what it had originally proposed. When it issued the proposed plan, it received public comments from the State of California and then Governor Schwarzenegger indicating that, in California's view, the plan did not go far enough in allowing for the development of renewable resources on public lands. The BLM attempted to be responsive to that comment and other public protests along that lines by giving public notice that it was going to consider selecting a different plan than what it had proposed and allowing for public comment on that proposal. So I think the fact that it did finally adopt an alternative that was analyzed in different combinations in the environmental impact statement, it was made in response to public comments. And that's how NEPA is supposed to work, just as illustrated in the public process for the project. Unless the Court has any additional questions, I'm happy to turn it over to my co-counsel. Very well. Thank you, Your Honor. Janice Schneider, representing San Diego Gas and Electric Company, intervener, defendant in this case. First, on the final agency action question, frankly, BAD's argument just doesn't make any sense. And it's not consistent with the actions that they took here. Actually, after the 45-day period where they claimed the IBLA purportedly lost jurisdiction, they actually had filed four additional briefs after that point in time. So they were actively pursuing their case in front of the IBLA. About seven months later, they then filed a complaint in district court. And then two months after that, the IBLA issued its decision, which clearly under Bennett v. Sphere and the Department of the Interior's own regulations at 43 CFR 4.403, that is the final and effective decision and the final agency action on issuance. The IBLA never lost jurisdiction here because the BAD never actually withdrew its appeal in front of the IBLA. So the IBLA continued to have jurisdiction. BAD never told them that they filed a complaint in court. And it's not clear to me from the record and from the docket sheet in front of the IBLA, which we'd be happy to provide to the court if you would like it, that there was any communication with the IBLA that a complaint actually had been filed in federal court. And so it was incumbent, we think, on BAD to actually withdraw its appeal in front of the IBLA. Otherwise, IBLA continued to maintain its jurisdiction and issued its decisions. And under their own regulations by operation of law, that became the final agency action. In our view, the BLM regulations do create options for plaintiffs. You can go to district court, especially if when a stay is denied, especially if you need injunctive relief, because the action is effective. Right? It's just like when you have a preliminary injunction in the district court and you go up on appeal to have that heard. The underlying form doesn't lose jurisdiction over the merits of the case. And, in fact, we have that situation in Sunrise II right now. So you can take that route, which the plaintiffs didn't do. I mean, they filed their complaint, but they didn't do anything to prosecute it. They never filed a preliminary injunction until almost two years after the BLM rod was actually issued. So, you know, our view of this is that you can't do what BAD did here, which is maintain two active appeals on the merits, one in front of the IBLA and one in front of the district court. The old election of remedies rule that we learned 45 years ago. That's exactly it, Your Honor. I suppose they could have sought a stay up in the IBLA. That's been done. Absolutely, Your Honor. They could have. But that's really our point. It was incumbent on them to select a forum. And then when they didn't and BAD issued an adverse decision, now they're trying to argue it should be ignored. Well, the oddity is that we do have some cases where people sought and received stays from the IBLA and then proceeded in district court. Now, under the district court's theory, that would have been improper because there wasn't a final agency action if they elected it. So I'm not sure how we reconcile our case law on this. Well, I think there's no question that some clarification would be helpful here. And I think the simple rule could be and should be that if you pursue in district court, it is incumbent on you to withdraw your appeal in front of the IBLA. And that creates some clarity for all of the parties. And people know exactly what the rules are of the game. So how about the RMP? Yeah. I was just moving on to that, Your Honor. On the RMP, we do differ a little bit from the federal government on that question. We agree that the district court got it right, that a challenge to the RMP itself is non-justiciable under Ohio Forestry. That's a distinct question from whether the underlying EIS and ROD can be challenged. So how do you deal with Oregon National Natural Desert Association? Well, that case did not discuss standing. And this goes also to the footnote in the text in Ohio Forestry, which talks about the NEPA process. And the Supreme Court there said a person with standing who is injured by a failure to comply with NEPA may comply. So our position is that the plaintiffs don't have standing here. It's a very straightforward Lujan argument. When you look at their declarations, they don't argue with sufficient specificity that they have Article III injury in fact, because the focus of their concerns are on these future wind farms. All right. So the ñ in your view, really, there was ñ the plaintiffs didn't have standing in the Oregon Natural Desert Association case, but it wasn't raised. Is that your position? Yes, Your Honor. But if the Court, you know, is inclined to reach the merits of the case, we're of the view, actually, because it is so fact-intensive, it would make some sense to send it back to the district court, and that this court might not want to act as the court of first impression on these questions. It's going to happen in the district court if you send it back to develop the record that we don't have here already. You do have ñ you have the exact same record, Your Honor. I'm not suggesting that there would be more ñ So is it a formal or substance thing to send it back? Well, I think there is ñ And the district court's going to say, here it is, and then we get back the same thing we had before. Well, that's possible, but you would also have the additional benefit of the district court's thinking on the record and any views that he may have on that. It's like the district court's thinking. That's why we bring him up.  It's not that I'm pandering to one side of the panel here. Well, I mean, I gather from your answer, though, that you don't see any time-sensitive problems with the remand to the district court. No, I don't at all. I mean, Sunrise, as we've discussed, is built through this area. It is completely built through this area. And additionally, Sunrise does have its own site-specific plan amendment that authorizes it to cross the planning area. So from our perspective, there are no time issues if it were to be sent back. And I think there would be some questions about, you know, if it were sent back for some additional development, you know, what sort of remedy should there be? I mean, there are obviously other actors out there who have been pursuing projects in reliance on the existing plan. So there's the potential for a lot of disruption. Often these things are sent back without vacature so that the agency can undergo some additional decision-making process. Or I'm sorry, the court can look at it and see if there's any decision-making process that needs to be undertaken. So under your view of justiciability, when would the plaintiffs have standing to sue? The plaintiffs would have standing to sue immediately if they had supportable declarations that provided for standing in this case. I see. Okay. Thank you, Your Honor. All right. Thank you. Thank you. I have a number of responses. First, I wanted to clarify the timing of the development of the case law here so that the court would understand how plaintiffs litigated this case reasonably in light of that developing jurisprudence. The IVLA's 45th day for acting on the petition for stay was May 10, 2009. This court ruled in NPCA v. BLM on November 11, 2009, thus clarifying what had been a somewhat open question in light of desert citizens. And it was that decision that made clear to plaintiffs in this case that they were then entitled to proceed with a lawsuit which was filed February 16, 2010. And let me explain why it is we were so confident that this court's resolution of that issue had been definitive. This is in NPCA 606F3, 1058, at page 1065, this court stated, we note that in some cases a record of decision may constitute final agency action, referring to a BLM record of decision. For example, where there is no administrative appeal, a record of decision will become effective and final following the expiration of in accordance with 43 CFR section 4.21A2. Similarly, where the appeals board denies a petition for a stay, a record of decision will become effective and final in accordance with 43 CFR section 4.21A3. Did that happen here? Yes. There was a denial of the stay. The IBLA denied the stay on May 14, 2010, but it had lost – excuse me. I'm sorry, that's when it denied the appeal. No, it denied the request for stay on July 14, 2009. Okay, so it had denied the request for stay in December of 2009. This court clarified in December 2009 that the rule as stated in Desert Citizens was the rule of the circuit. Let me just continue with a couple more sentences, Your Honors. Where the appeals board denies a petition for stay, a record of decision will become effective and final in accordance with 43 CFR section 4.21A3. Indeed, this was the situation in Desert Citizens against Pollution v. Bisson, citing the case. There, the appeals board denied a petition for stay. This court, therefore, reviewed the record of decision as the final agency action and references the case. In the case before us, by contrast, the appeals board granted a stay. The record of a decision, therefore, never became effective and was not the final agency action. We reversed the district court to extend it, limited it, et cetera. So the court was making this careful distinction between where the IVLA grants a petition for stay and then its decision becomes the final agency action, and contrasting that with the case here and in Desert Citizens where the request for stay was denied. Right, but in Bisson, or we're talking about the same case, it appears that the stay was issued, the denial of stay was issued concomitantly with the denial of the appeal. So in Desert Citizens-Bisson, there was, that makes perfect sense to me. What doesn't make particular sense to me is that you can have an appeal going on two different tracks with inconsistent results. One of the tracks has to stop. Well, if I may suggest there's a solution that's, I think, the preferable way to proceed, is that whereas here, under its own regulations, IVLA fails to take action in a timely manner and thereafter denies the petition for stay, then the aggrieved party may seek review in the federal district court. Once the jurisdiction of the district court has been invoked, that jurisdiction is primary and supersedes any attempt by the IVLA to basically pull the rug out from underneath the district court and to reassert itself. Well, why is it pulling the rug out from under the district court when the appeal is pending? Because the district court has already taken jurisdiction over the record of decision of BLM, pursuant to IVLA's and BLM's own regulations which provide that IVLA's jurisdiction is forfeited if it fails to act on a petition for stay in a timely manner or thereafter denies the petition for stay. Did you withdraw your appeal to the IVLA when you discovered this? I wasn't aware, under this case law, that there would then be a duty to advise the... The answer is no, you did not. I'm not aware that we did. The other side says you filed four briefs. When was that? That was... Was that before November 11, 2009? Probably, but I would have to check my files. I don't have that here. But I can assure you that was the thinking that once this court had clarified the rule, we were then permitted to proceed in federalistic court and there's no looking back. It would have been... I think you would have, but if the IVLA had gone your way, I expect you would have had a different reaction. I don't think so. It denied the stay. And, oh, which reminds me, there was a suggestion that nothing transpired in this case until a motion for a plenum injunction was filed April 16, 2010. Actually, there was a lot going on in this case. There was... And I could... The court's records will reflect this. I need not delay it, or belabor it, but there was extensive interplay among the parties developing this very large administrative record. There was extensive discovery conducted. There were summary judgment motions that we filed in December of 2010 that were calendared for resolution substantially before this project was thought to be constructed. In the meantime, the moving target of the project kept changing, so it was difficult to know what the effects would be as necessary for a plenary injunction motion. You are conserving over your time, so briefly. And then as to the justiciability issue, the RMP rod was issued on October 10, 2008. Three days later, the PowerLink EIS was approved, allowing PowerLink to proceed through McCain Valley based primarily on the changes, the last-minute changes in the RMP for that area. So this is where you can see the immediate effect of an RMP approval or amendment is that it immediately allows land uses inconsistent with prior practice and planning. Okay. Thank you. Thank you all for your arguments this morning. The case will be submitted for decision, and we will be in recess for 10 minutes.
judges: Duffy, Trott, Thomas